# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

YVETTE YOUNG,                          :

      Plaintiff,                    :          Case No. 3:12cv00029

 vs.                                   :          District Judge Thomas M. Rose
                                                    Chief Magistrate Judge Sharon L. Ovington
MICHAEL J. ASTRUE,                     :
Commissioner of the Social
Security Administration,               :

      Defendant.                    :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

    Plaintiff applied for Supplemental Security Income under the Social Security Act.  An

Administrative Law Judge denied her application in what became the final decision of the

Social Security Administration.  This Court, however, remanded the matter to the Social

Security Administration for further proceedings mainly because the Administrative Law

Judge did not apply the correct legal criteria.  (Doc. #20, PageID at 99-105; Doc. #22,

PageId at 119).

    The case is now before the Court upon Plaintiff's Application For Payment Of

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Attorney Fees Pursuant To The Equal Access To Justice Act (EAJA) (Doc. #24), the

Commissioner's Response (Doc. #25), Plaintiff's Reply (Doc. #26), Plaintiff's Supplemental

Memorandum (Doc. #27), and the record as a whole.  Plaintiff seeks a total award of

attorney fees under the EAJA of $5,206.83.

## II.    Applicable Law and Analysis

### A.    The EAJA

A prevailing plaintiff in a social security cases is sometimes eligible for EAJA fees

under 28 U.S.C. §2412.  The EAJA requires the government to pay a prevailing social-

security plaintiff's attorney fees "unless the court finds that the position of the United States

was substantially justified or that special circumstances make an award unjust."  28 U.S.C.

§2412(d)(1)(A); *see Pierce v. Underwood*, 487 U.S. 552, 556, 108 S.Ct. 2451 (1988); *see*

*also Scarborough v. Principi*, 541 U.S. 401, 407, 124 S.Ct. 1856 (2004).

There is no dispute in the present case that "Plaintiff has prevailing party status."

(Doc. #25, PageID at 239).  The parties' dispute therefore focuses on whether the

Commissioner's position was "substantially justified."  28 U.S.C. §2412(d)(1)(A).

> A position is substantially justified when it is "'justified in substance or
> in the main' – that is, justified to a degree that could satisfy a reasonable
> person." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541.  Stated otherwise, a position
> is substantially justified when it has a "reasonable basis both in law and fact."
> *Id*.  The fact that . . . the Commissioner's position was unsupported by
> substantial evidence does not foreclose the possibility that the position was
> substantially justified.  *See id*. at 569, 108 S.Ct. 2541; *Jankovich v. Bowen*,
> 868 F.2d 867, 870 (6th Cir. 1989).  Indeed, "Congress did not . . . want the
> 'substantially justified' standard to 'be read to raise a presumption that the
> Government position was not substantially justified simply because it lost the

2

case. . . .'" *Scarborough*, 541 U.S. at [415], 124 S.Ct. at 1866 (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed.Cir. 2003)).

*Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). The Commissioner bears the

burden of establishing that the government's position was substantially justified.

*Scarborough*, 541 U.S. at 414-15, 124 S.Ct. at 1865-66.

In the present case, the Commissioner contends that the government's position was

substantially justified because it the ALJ specifically identified Dr. Miller's opinions and

gave several reasons for rejecting Dr. Miller's opinions. The Commissioner further

contends that the evidence supporting the ALJ's decision demonstrates that the

government's position was "justified in substance or in the main" for purposes of EAJA.

(Doc. #25, PageID at 243) (quoting *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541).

The Commissioner's contentions fail to show that the government's position in

support of the ALJ's decision had a "reasonable basis both in law and fact." *Pierce*, 487

U.S. at 565, 108 S.Ct. 2541. The problem with the government's position was it failed to

recognize that "the ALJ did not apply the correct legal criteria." (Doc. #22, PageID at 119).

The Court previously explained:

> The ALJ found that "good cause" existed to reject Dr. Miller's opinions. (Tr. 25). The ALJ's use of this phrase "good cause" finds no identical supporting language in the Regulations that apply to the ALJ's evaluation of treating medical source opinions. *See* 20 C.F.R. §416.927(d)(2)-(5). Rather than looking for "good cause" to reject a treating physician's opinions, the Regulations provide much more specific mandatory instructions to ALJs, beginning with the treating physician rule: "The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic

3

techniques' and 'is not inconsistent with the other substantial evidence in the case record.'" *Blakley*, 581 F.3d at 406; *see Wilson*, 378 F.3d at 544; 20 C.F.R. §416.927(d)(2). The Regulations further mandate that where controlling weight does not apply, the ALJ must continuing weighing the treating physician's opinions by applying certain factors: "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source ...." *Wilson*, 378 F.3d at 544; *see* 20 C.F.R. §416.927(d)(2)-(6).

The phrase "good cause" applied by the ALJ finds no identical supporting language in the applicable Regulation, 20 C.R.F. §416.927(d), and the phrase is too nebulous to incorporate the Regulation's specific requirement that "controlling weight" must be given to a treating physician's opinion when the treating physician rule is met. *See id.*; *see also Wilson*, 710 F.3d at 376 ("An ALJ must give the opinion of a treating source controlling weight..." if the requirements of the treating physician rule apply). The ALJ's brief discussion of the standards applicable to treating physicians and other medical sources overlooks, or at a minimum downplays, the deference generally applicable to treating source opinions. The ALJ wrote, for example, "Social Security Ruling 96-2p states that generally a treating physician's opinion is given great weight. However, such opinion must be supported by medically acceptable clinical or diagnostic techniques, and any other evince [sic] of record...." (Tr. 25). Although this is an apparent attempt to set forth the treating physician rule, the ALJ did not set forth the correct legal criteria. The treating physician rule, where applicable, requires the ALJ to place "controlling weight" – not merely "great weight"– on the treating physician's opinion. The phrase "controlling weight" is the precise language used in the Regulation, §416.927(d)(2), and is repeated time and again in Social Security Ruling 96-2p and caselaw, *e.g., Rogers*, 486 F.3d at 243; *Wilson*, 378 F.3d at 544.

In addition, when a treating physician's opinion is given "controlling weight," the opinion controls over what? It controls over other medical source opinions of record, especially those provided by non-treating and non-examining medical sources. In contrast, if the ALJ's "great weight" is applied to a treating physician's opinion, such weight could be overborne by a non-examining or record-reviewing medical source opinion without any consideration of the deference generally due a treating medical source's opinions. This is contrary to 20 C.F.R. §416.927, which dictates a process by which ALJs must consider the source of the opinion – *i.e.*, whether it is from a treating source or an

4

examining source or a record-reviewing source. *See Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("The source of the opinion ... dictates the process by which the Commissioner accords it weight."). "In other words, '[t]he regulations provide progressively more rigorous tests for weighing the opinions as the ties between the source of the opinion and the individual become weaker.'" *Id.* at 375 (quoting, in part, Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2). "Even if the treating physician's opinion is not given controlling weight, 'there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference.'" *Hensley v. Comm'r of Social Sec.*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting, in part, *Rogers*, 486 F.3d at 242). By substituting a good cause/great weight review in place of the regulatory-required review for "controlling weight," the ALJ failed to subject Dr. Miller's opinions to the mandatory Regulatory requirements of the treating physician rule. *See Blakley*, 581 F.3d at 406; *see also Hensley v. Comm'r of Social Sec.*, 573 F.3d 263, 266 (6th Cir. 2009)....

The ALJ also made a passing reference to the Regulation and Rulings applicable to evaluating medical source opinions. He wrote, "The undersigned has also considered the opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p and 06-3p." (Tr. 24). Without some more meaningful application and explanation of the applicable legal standards required by this Regulation and these Rulings, this passing reference does not satisfy the ALJ's mandatory duty to provide "good reasons" for rejecting Dr. Miller's opinions. *Rogers*, 486 F.3d at 246. Another problem with the ALJ's recitation of the standards applicable to Dr. Miller's opinions exists in the ALJ's concern that the treating physician's opinion must be supported by "any other evi[de]nce of record." This language does not track the Regulation's controlling-weight requirement that a treating physician's opinion must not be "inconsistent with other substantial evidence ... [of] record ...." §416.927(d)(2) (emphasis added). Rather than such "substantial evidence," use of the ALJ's phrase "any other evi[de]nce of record" may allow an ALJ to decline to apply the treating physician rule on the ground that the physician's opinion was contrary to any single piece of evidence in the record. At best for the ALJ, the phrase "any other evi[de]nce of record" is ambiguous, allowing any particular evidence to either defeat the treating physician rule or suffice to support the treating physician rule. Such ambiguity would not exist if the ALJ had stuck more strictly to the language of the Regulation by determining whether Dr. Miller's opinion was "not inconsistent with the other substantial evidence ... [of] record ...." 20 C.F.R. §416.927(d)(2).

Even if the ALJ applied the correct legal criteria to Dr. Miller's opinion, he erred by rejecting it based on "the findings from other treating or examining physicians, the findings and opinions of the consultative physician and psychologist, and the findings of the non examining State agency medical experts." (Tr. 25). Although an ALJ may – in some situations – reject a treating medical source's opinions based on contrary opinions of a consultative source, a one-time examiner, or a record-reviewing source, the ALJ must weigh such contrary opinions under the factors mandated by the Regulations. Social Security Ruling 96-6p explains, "the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical qualifications, and explanations for the opinions, than are required of treating sources." 1996 WL 374180 at *2. There is no indication in the ALJ's decision that he evaluated the opinions of Drs. Danopulos, Graham, Chaffins, or Chambly under the factors required by the Regulations, §416.929(d)(3)-(6) or Ruling. 96-6p. This constituted error because "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379-80.

(Doc. #20, PageID at 100-04).

The Commissioner's contentions regarding the evidence and substantial justification do not obviate the readily discernible errors of law committed by the ALJ in regard to the opinions of Dr. Miller.  For this reason, the Commissioner's contentions do not establish a reasonable basis in law or fact for the Commissioner's litigation position.  The Commissioner, therefore, has not met his burden of establishing that his support for the ALJ's decision was substantially justified or that an EAJA award to Plaintiff will be unjust. *Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge's denial of

6

benefits is without substantial justification.").  Plaintiff is therefore entitled to an EAJA award.

### B.   Attorney-Fee Hourly Rate

Plaintiff's application for attorney fees seeks a total EAJA award of $ 4,502.57 based on the hourly attorney-fee rates of $177.85 (for work in 2012) and $180.58 (for work in 2013). Plaintiff's supplement to her application for attorney fees seeks an additional $704.26 in attorney fees for work performed in connection with the Reply she filed in support of her application for attorney fees.  Altogether, Plaintiff seeks a total award of attorney fees equaling $5,206.83.

The Commissioner contends that Plaintiff's requested hourly rates are excessive because she has failed to establish the prevailing market rate for Social Security cases in Southern Ohio.  "The Commissioner suggests an allowed fee of $3,150.00 based on 25.2 hours of attorney work billed at $125.00 per hour." (Doc. #25, PageID at 249).

Under the EAJA, the amount of attorney fees "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee."  28 U.S.C. §2412(d)(2)(A).  The present statutory rate of $125 per hour is "a ceiling and not a floor."  *Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 199 (6th Cir. 1992).  A plaintiff seeking a higher rate bears the burden of producing appropriate evidence to support the requested increase.  *Bryant v. Commiss'r of Soc. Sec.*, 578 F.3d 443,

450 (6th Cir. 2009). "Plaintiffs must 'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id*. at 450 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Beginning with a cost-of-living increase, the CPI all items index in March 1996 (when the $125 hourly rate was set) was 155.7. The CPI in July 2013 was 233.9. Adjusting for cost-of-living increase is accomplished by dividing the current CPI by the March 1996 CPI (233.9 ÷ 155.7) resulting in a 1.50 cost-of-living factor. Applying this cost-of-living factor to the $125 hourly rate results in a present hourly rate of $187.50 ($125 × 1.50 = 187.50). *Cf. Durrell v. Astrue*, 3:09cv165, 2011 WL 3862004 at *4 (S.D. Ohio Aug. 11, 2011) (Merz, M.J.) (applying this method of calculation), R&R adopted, 3:09-CV-165, 2011 WL 3875522 (Rice, D.J.). Plaintiff's requested hourly rates of $177.85 (2012) and $180.58 (2013) are therefore below the statutory hourly rate when it is adjusted by the cost-of-living increase using the CPI's data, a result tending to support the reasonableness of the requested hourly rates. *See Begley v. Sec'y of Health & Human Servs*., 966 F.2d 196, 199-200 (6th Cir. 1992) (recognizing EAJA allows for cost-of-living adjustment for statutory hourly rate).

But the Commissioner is correct that Plaintiff has failed to establish that the prevailing hourly rate for social security cases in Southern Ohio is either $177.85 (2012) or $180.58 (2013). This is because Plaintiff has not presented evidence sufficient to

demonstrate that the requested hourly rate is "in line with those prevailing in the community...," *Bryant*, 578 F.3d at 450, here, Southwestern Ohio.  In calculating the proper market for attorney fees, "a court can look to evidence of legal fees charged in the same geographic area for the pertinent area of practice, as well as take judicial notice of the historical fee reimbursement rate in the district." *Turner v. Astrue*, No. 06-450, 2008 WL 2950063 at *1 (E.D. Ky. July 30, 2008) (Unthank, D.J.) (citing *London v. Hatter,* 134 F.Supp.2d 940, 941-942 (E.D. Tenn. 2001)). "[T]his court should apply the 'local' rate charged by lawyers rather than counsel's 'home' rate." *Sassan v. Comm'r of Soc. Sec.*, 1:08-CV-120, 2010 WL 3892220 at *4 (W.D. Mich. Jan. 13, 2010) (Brenneman, Jr., M.J.),[2] (quoting parenthetically *Adcock–Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("[t]he Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within that court's territorial jurisdiction")).

The prevailing hourly rate for social security attorneys of similar skill, experience, and reputation within southwest Ohio is "at least $170.00."  *Id*. at *4-*5 (listing cases). "The Court is permitted to consider evidence of legal fees charged in the same geographic area, as well as take judicial notice of the historical fee reimbursement rate in this district, in

---

[2] R&R adopted as modified on other grounds sub nom. Sassan v. Astrue, 1:08-CV-120, 2010 WL 3843767 (W.D. Mich. Sept. 28, 2010).

9

determining the prevailing market rate for the case before the Court." *Teel v. Comm'r of Soc. Sec.*, 1:10-CV-613, 2012 WL 1940627 *4-*5 (S.D. Ohio May 29, 2012) (Litkovitz, M.J.), R&R adopted, 1:10-CV-613, 2012 WL 2408716 (S.D. Ohio June 26, 2012) (Beckwith, Senior D.J.).  When this is combined with the extensive experience of attorney Paulette F. Balin – who has represented social security plaintiffs in federal court and in administrative hearings since 1979 (Doc. #24, Exh. B) – along with the fact that $170 per hour rate is below the statutory rate of $125 per hour adjusted by the applicable cost-of-living increase, Plaintiff is entitled to attorney fees calculated at $170 per hour.

Plaintiff is therefore entitled to a total award of attorney fees equaling $2,550.00 (15 hours x $170 = $2550.00).

The Commissioner lastly maintains that the Court should not award attorney fees directly to Plaintiff's counsel under *Astrue v. Ratliff*, 560 U.S. 586, __, 130 S.Ct. 2521, 2525-26 (2010).  This is correct but only if Plaintiff owes a pre-existing debt to the government.  *Id*.  The present record contains no information regarding whether or not Plaintiff owes a pre-existing debt to the government.  In the event no such pre-existing debt exists, payment directly to Plaintiff's will be warranted.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Application For Attorney Fees Under Equal Access To Justice Act, 28 U.S.C.§2412(d) (Doc. #24) be **GRANTED** in part in the amount of $2,550.00, and be **DENIED** in remaining part;

2. The Clerk of Court be directed to enter Judgment in favor of Plaintiff and against the Commissioner of the Social Security Administration in the total

amount of $2,550.00;

3. The Commissioner be directed to determine within 30 days whether Plaintiff owes a pre-existing debt to the government and, if not, to pay the EAJA award directly to Plaintiff's counsel; and

4. The case remain terminated on the docket of this Court.

February 7, 2014

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

11

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).